UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JOSE ANTONIO CASTILLO,

          Plaintiff,

          -against-

Commissioner, Social Security Administration,

          Defendant.

-------------------------------------------------------------X

**OPINION & ORDER**

17-CV-09953 (JGK) (KHP)

**KATHARINE H. PARKER, United States Magistrate Judge**.

      Jose Antonio Castillo ("Plaintiff") is represented by counsel and commenced this action against Defendant Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's decision that he was not disabled under Section 1614(a)(3)(A) of the Act from February 11, 2014, the date Plaintiff applied for Social Security benefits, through the date of the decision.

      The parties submitted a joint stipulation in lieu of cross-motions for judgment on the pleadings (the "Joint Stipulation" or "JS," Doc. No. 17) pursuant to this Court's Order. (Doc. No. 16.) In the Joint Stipulation, the parties agreed that the two issues before this Court are (1) whether the Administrative Law Judge ("ALJ") properly weighed the medical opinion evidence and (2) whether the ALJ properly evaluated Plaintiff's testimony. In the instant appeal, Plaintiff only disputes the ALJ's findings pertaining to his mental impairments and does not challenge

the findings made regarding his alleged physical impairments. (JS 2 n.3.) Accordingly, this Court's decision focuses on Plaintiff's alleged mental impairments.

For the reasons set forth below, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED insofar as this case is remanded for further proceedings.

## BACKGROUND

### I. *Summary of Claim and Procedural History*

Plaintiff Castillo is 43 years old and lives with his young son and long-time girlfriend in the home of a friend. (*Id*. at 12-13.) He also has four adult children who do not live with him. (Administrative Record ("Tr.") 266.) Plaintiff has an eleventh-grade education and was enrolled in special education as a child due to behavioral issues. (JS 12-13.) There is one indication in the record that he has dyslexia and only a third-grade reading level. (Tr. 260.) He was incarcerated from around 1999 through 2012 and has not been employed in any capacity since working in the kitchen while incarcerated. (*Id*. at 55; JS 12.) Plaintiff Castillo testified that he fell into a deep depression when his mother died in 2010 and has been "in a total rage" ever since. (JS 13.) He also alleges that he began experiencing chronic symptoms arising from cellulitis[1] of his left leg, asthma, high blood pressure, and anxiety in June of 2010. (*Id.*) Plaintiff's long-term goal is to obtain his general equivalency diploma ("GED") and become a barber. (*Id*. at 2.) The Court assumes knowledge of and does not repeat all the stipulated facts concerning Plaintiff's medical treatment here. (*See generally id.*)

---

[1] "Cellulitis is a spreading bacterial infection of the skin and the tissues immediately beneath the skin." https://www.merckmanuals.com/home/skin-disorders/bacterial-skin-infections/cellulitis. Symptoms may include redness, pain, skin tenderness, and, in more serious cases, fever, and chills. *Id.* Treatment of this condition typically requires antibiotics. *Id.*

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on February 11, 2014, claiming that he was unable to perform any kind of substantial work due to impairments arising from cellulitis affecting his left leg, asthma, high blood pressure, anxiety, and depression. (Tr. 80.) The Social Security Administration denied his initial application. (*Id*. at 92-96.)

Plaintiff subsequently retained counsel and requested a hearing by an ALJ to appeal the denial of his application for SSI benefits. (*Id*. at 97-105.) Plaintiff attended a hearing before ALJ Benjamin Green on June 22, 2016 with his attorney. (*Id*. at 45-79.) The ALJ issued a decision on October 14, 2016, finding that Plaintiff was not disabled from February 11, 2014 through October 14, 2016, the decision date. (*Id*. at 27-44.) Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council and that request was denied on October 24, 2017. (*Id*. at 1-7.)

## II.  *The Commissioner's Decision*

ALJ Green decided to deny Plaintiff's benefits application pursuant to the five-step sequential process contemplated in the governing regulations. 20 C.F.R. § 416.920 (a)(4)(i)-(v). At step one, he found that Plaintiff has not engaged in substantial gainful activity since February 11, 2014, the application date. (Tr. 32.) At step two, ALJ Green concluded that Plaintiff suffered from the following severe impairments: depression, cellulitis, obesity, hypertension, and asthma. (*Id.*)

At step three, the ALJ determined that Plaintiff's impairments, considered both individually and collectively, fail to meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id.*) When evaluating Plaintiff's degree of limitation resulting from his mental impairments, the ALJ looked to Section

3

12.04 in the Listings, which addresses affective disorders. Pursuant to this Section, a claimant has an affective disorder when they meet the criteria for both Paragraphs A and B or when they meet the criteria for Paragraph C in the Listings.

The ALJ's decision does not address whether Plaintiff met the requirements of Paragraph A. (*Id*. at 32.) However, the ALJ found that Plaintiff had the following limitations under Paragraph B: moderate difficulties in social functioning and in concentration, persistence or pace, and no episodes of decompensation. (*Id*. at 32-33.) Specifically, the ALJ determined the following:

- Pursuant to the consultative psychiatric evaluation conducted by Dr. Howard Tedoff on April 28, 2014, Plaintiff suffers from no restriction in daily living because he attends to his personal grooming and hygiene needs and assists with activities of daily living in his home. (*Id*. at 33; *see also id*. at 259.)

- Plaintiff suffers from moderate difficulties in social functioning. Although he cooperated and behaved appropriately during his consultative examination with Dr. Tedoff, the ALJ also took Plaintiff's claims that he does not like being around others and that he "has a tendency to lash out at people and be socially isolative" into account. (*Id*. at 33.) The ALJ also considered treatment records documenting sessions focused on anger management skills, as reported by Dr. Tedoff (*id*. at 267), in medical evidence records from St. Marks Place Institute for Mental Health, Inc. ("St. Mark's"). (*Id*. at 296, 304, 329.)

- Plaintiff suffers from moderate difficulties regarding concentration, persistence or pace. The ALJ relied on evidence in the record provided by Dr. Tedoff (*id*. at 261) and St. Mark's (*id*. at 303), but also considered Plaintiff's testimony that he forgets things easily and was enrolled in special education classes as a child. (*Id*. at 53, 65-66.)

- The ALJ also found that Plaintiff suffered no periods of extended decompensation. (*Id*. at 33.)

4

Citing to the absence of evidence in the record, the ALJ concluded that, because Plaintiff did not suffer from at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, Paragraph B criteria were not satisfied. (*Id*. at 33) (internal quotations omitted.) The ALJ, likewise, concluded that the evidence in the record failed to establish the presence of Paragraph C criteria for Listing 12.04 because he found no supporting evidence in the record.[2] (*Id*. at 33.)

At step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b),[3] with the additional limitation that he be "limited to performing simple and routine tasks and to making simple and routine workplace decisions and having few workplace changes introduced." (*Id*. at 34.) He also concluded that Plaintiff "can have only occasional dealings with the public, supervisors and co-workers" and that he should not be exposed to fumes, dust, odors and other pulmonary irritants." (*Id.*)

In determining Plaintiff's physical functioning, ALJ Green relied on the record and Plaintiff's testimony that he can only walk for several blocks at a time, experiences pain when sitting, and has difficulty carrying multiple bottles of soda. (*Id.*) The ALJ also considered

---

[2] The requirements of Paragraph C are: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." § 416.967(b).

5

treatment records addressing Plaintiff's reoccurring cellulitis, asthma, obesity, and high blood pressure, and secondary chronic bilateral lower leg lymphedema.[4] (*Id*. at 35.)  The ALJ relied on a treating record from Dr. Jin Suh, noting that there was "no evidence for cellulitis" on June 9, 2014 (*id*.; *see also id*. at 317), and medical records from Sage Medical Plaza documenting that Plaintiff had a normal gait and "normal heel-toe and tandem walking."  (*Id*. at 35; *see also id*. at 326.)  He also relied heavily on the physical consultative examination report prepared by Dr. Iqbal Teli, which explained that Plaintiff had "a full squat and a normal gait," "mild restriction for prolonged standing, walking, and climbing," and "should avoid dust and other respiratory irritants due to history of asthma." (*Id*. at 35, 229.)[5]

When analyzing Plaintiff's psychological functioning, the ALJ considered Plaintiff's testimony that he lashes out at others, has difficulty being around others, and struggles to remember things.  (*Id*. at 34.)  He also considered treatment notes from Dr. Mark Rybakov, which stated that Plaintiff suffers from major depressive disorder and mild cannabis dependence, has a global assessment of functioning ("GAF") score of 55,[6] and that Plaintiff was prescribed medication to treat his symptoms.  (*Id*. at 35; *see also id*. at 294, 297.)

---

[4] Lymphedema is the accumulation of lymph in tissues that results in swelling. https://www.merckmanuals.com/home/heart-and-blood-vessel-disorders/lymphatic-disorders/lymphedema#v1488454.  Plaintiff did not identify this condition in his initial SSI benefits application.  (*Id*. at 80.)

[5] Though mentioned by Plaintiff during the hearing, the ALJ was not required to consider Plaintiff's alleged right leg, back, and shoulder pain in reaching his RFC determination because Plaintiff did not list these impairments in his initial SSI application.  (*Id*. at 55, 61-62, 80.)  Moreover, apart from Plaintiff's hearing testimony, there was no evidence in the record indicating that Plaintiff suffers from these conditions.  Indeed, the available medical records indicate that Plaintiff can walk normally, carry light items, and has normal functioning in his back.  (*E.g.*, *id*. at 229, 326.)

[6] The Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that a GAF score of 41-50 reflects serious symptoms and a score of 51-60 reflects moderate symptoms.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 27-34 (4th ed., text rev. 2000).

ALJ Green also considered treatments notes prepared by Nurse Practitioner ("N.P.") Griffin stating that Plaintiff suffers from depression but reported significant improvement in his mood since beginning treatment. (*Id*. at 36.) He also relied on a Mental Impairment Questionnaire (the "Questionnaire") prepared by N.P. Griffin and co-signed by Dr. Keith Degi stating that Plaintiff had some "moderate" limitations in areas of concentration and persistence, social interactions, and adaptation, and some "moderate-to-marked" limitations in areas of concentration and persistence and social interactions. (*Id.*; *see also id*. at 283.) The ALJ "accorded little weight to [N.P. Griffin's and Dr. Degi's] opinion regarding the claimant's ability to perform activities within a schedule and consistently be punctual and that he would have marked limitations dealing with the public." (*Id*. at 36.) He justified giving little weight to portions of the Questionnaire by stating that "there was nothing in [N.P. Griffin's] treating records to support this assessment or in the subsequent mental health treating evidence." (*Id*. at 37.)

The ALJ also relied on a consultative assessment prepared by Dr. Tedoff advising that Plaintiff should be limited to performing routine tasks, making simple workplace decisions, and having only occasional dealings with the public. (*Id.*; *see also id*. 259-63.) However, ALJ Green afforded little weight to Dr. Tedoff's conclusion that Plaintiff Castillo has "marked limits in his ability to maintain a regular schedule in a workplace." (*Id*. at 262.)

At step five of his analysis, the ALJ considered Plaintiff's age, education, and RFC and, after consulting with a vocational expert, found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 38–39.) Thus, the ALJ held that Plaintiff was not disabled from February 11, 2014 through the decision date. (*Id*. at 39.)

**DISCUSSION**

*I.  Applicable Law*

   *A.  Judicial Standard of Review of the Commissioner's Decision*

A court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision.  42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record.  *Id.*  If they are supported by substantial evidence in the administrative record, the ALJ's findings as to any facts are conclusive.  42 U.S.C. § 405(g); § 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id.* (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR).  In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the reviewing court must "'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision. . . .'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir.

2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The substantial evidence standard means that, once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Id*. at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. § 423(d)(5)(B); § 1382(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." § 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82–84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268–69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded treating physician evidence typically requires remand). If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm. 42 U.S.C. § 405(g). Otherwise, the court may modify or reverse the decision, with or without remand. *Id.*

### B. *Legal Principles Applicable to the Commissioner's Disability Determination*

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A); § 1382c(a)(3)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A); § 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry:

(1) Whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i).

(2) If not gainfully employed, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe." § 416.920(a)(4)(ii)

(3) If the claimant has a "severe impairment," determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled and the claimant will be eligible for benefits. § 416.920(a)(4)(iii). At this stage, the Commissioner also must determine the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments, or RFC.[7] § 416.920(a)(4)(iv).

---

[7] A claimant's residual functional capacity is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* SSR 96-9P (clarifying that a claimant's residual functional capacity is his maximum ability to perform full-time work on a regular and continuing basis). The ALJ's

(4) If the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform his past work. *Id.*

(5) If the claimant is not capable of performing work he performed in the past, the Commissioner must determine whether the claimant is capable of performing other work. § 416.920(a)(4)(v); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden at the first four steps of the analysis. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). At the last step, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

Where a claimant alleges mental impairments in connection with an application for disability benefits, an ALJ also must assess those limitations pursuant to 20 C.F.R. § 416.920a. These regulations require the application of a "special technique" at the second and third steps of the five-step framework and at each level of administrative review. § 416.920a(a); *Kohler v. Astrue*, 546 F.3d 260, 265–66 (2d Cir. 2008). Thus, the ALJ must first determine whether:

(1) The claimant has "medically determinable mental impairment(s)." § 416.920a(b)(1).

(2) If the claimant has such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s)" in the following areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 416.920a (b)(2), (c)(3).

---

assessment of a claimant's residual functional capacity must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing § 404.1545(a)(3)).

(3) The first three functional areas (daily living; social functioning; and concentration, persistence, or pace) are rated using a five-point scale: none, mild, moderate, marked, and extreme. The fourth functional area (episodes of decompensation) is rated using a four-point scale: none, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to perform any gainful activity. § 416.920a(c)(4).

If the degree of limitation is "none" or "mild," the ALJ will typically conclude that the claimant's impairments are not severe, unless contrary evidence indicates more than a minimal limitation to complete basic work activities. § 416.920a(d)(1). Where a claimant's mental impairment is severe, the ALJ will determine if it meets or is equivalent in severity to a listed mental disorder. § 416.920a(d)(2). The ALJ accomplishes this task by comparing medical findings regarding the claimant's impairments to the rating of the degree of functional limitation to the criteria of the appropriate mental disorder. *Id.* Where a claimant has a mental impairment that neither meets nor is equivalent in severity to any listing, the claimant's RFC will be assessed, in accordance with § 416.920(a)(4). § 416.920a(d)(3).

## II. *Analysis*

### A. *Development of the Record*

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). Thus, the ALJ must investigate the facts and develop the arguments both for and against granting benefits. *Id.* Whether the ALJ has met this duty to develop the record is a threshold question. Accordingly, before reviewing whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely

developed the administrative record." *Scott v. Astrue,* No. 09-cv-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010). The ALJ has an obligation to develop the record even where the claimant has legal counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Remand is appropriate where this duty is not discharged. *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision."). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

Although Plaintiff does not expressly allege that the ALJ failed to fully develop the record (JS 1), this Court is nevertheless obliged to conduct its own independent assessment of whether the ALJ properly discharged this duty.[8] In making his decision, ALJ Green stated that he considered Exhibits 1A-12F, which contain Plaintiff's full medical record. (Tr. 30.) He also relied on information obtained from Plaintiff during an in-person hearing. (*E.g., id*. at 56-59, 69-72.) Although the ALJ stated that the "record includes sparse medical evidence regarding the claimant's physical functioning" (*id*. at 35), this Court concludes that Plaintiff's medical record, as it pertains to his physical impairments, appears to be complete with respect to the conditions alleged in Plaintiff's SSI benefits application. (*See, e.g.*, *id*. 35, 80, 228-29, 233-34,

---

[8] While Plaintiff did not expressly raise the ALJ's failure to develop the record as a matter in controversy, this issue is inexorably intertwined with another problem Plaintiff affirmatively raised – that the ALJ failed to properly weigh the medical opinion evidence in the record.

13

316-17, 326.) The Court, however, reaches the opposite conclusion when evaluating Plaintiff's mental health records.

In his decision, the ALJ disregarded portions of the Questionnaire prepared by N.P. Griffin and Dr. Degi finding that Plaintiff has "moderate-to-marked" limitations in his ability to "[p]erform activities within a schedule and consistently be punctual," "[w]ork in coordination with or near others without being distracted by them," and his ability to "[i]nteract appropriately with the public." (*Id*. at 283.) The Questionnaire indicates that these symptoms would occur frequently, during between one to two-thirds of an eight-hour work day. (*Id.*) The ALJ also brushed aside conclusions made by Dr. Tedoff that Plaintiff has "marked limits in his ability to maintain a regular schedule in a workplace" and that Plaintiff's prognosis for "being able to look for, obtain and sustain himself in gainful employment in the near future is guarded to poor." (*Id*. at 262.) The ALJ ignored these assessments because he concluded that they were unsupported by the record and N.P. Griffin's treating notes. (*Id*. at 36-37.)

ALJ Green's finding that N.P. Griffin's, Dr. Degi's, and Dr. Tedoff's opinions were unsupported by the record triggered an obligation to further develop the record with respect to those opinions. Indeed, it is well established that where an ALJ disagrees with an assessment provided by a medical or other treating source, he must explore the basis for the assessment and whether it is consistent with evidence in the record. Such exploration may require the ALJ to re-contact the claimant's treating sources. *See, e.g.*, *Selinsky v. Comm'r of Soc. Sec.*, No. 08-CV-1363 (GLS)(VEB), 2010 WL 2671502, at *6 (N.D.N.Y. June 14, 2010), *adopted by*, No. 5:08-CV-1363, 2010 WL 2671499 (N.D.N.Y. June 30, 2010) (remanding for further development of the record and instructing ALJ to "re-contact the treating nurse

practitioner to obtain the basis for her assessment regarding Plaintiff's RFC. . . ."). Here, the ALJ should have at least attempted to contact N.P. Griffin and Dr. Degi to ask why they concluded that Plaintiff exhibited certain "moderate-to-marked" mental impairments. He also should have sought to contact Dr. Tedoff to clarify why he believed that Plaintiff would be unable to adhere to a regular work schedule.

Although an ALJ's misapplication of the law may be ignored where it constitutes harmless error, here, the ALJ's failure to adequately develop the record was not harmless and warrants remand. Indeed, at the hearing, the ALJ asked the Commissioner's vocational expert whether Plaintiff's absence from work at least two days per month would "eliminate the availability of employment options" and the expert responded in the affirmative. (*Id*. at 75.) The expert further testified that an individual who is unable to consistently be punctual may not be employable because "[l]ateness is equivalent to not being on the job site." (*Id*. at 76-77.) Because N.P. Griffin, Dr. Degi, and Dr. Tedoff all opined that Plaintiff suffers marked limitations in his ability to adhere to a schedule and consistently be punctual, the facts underlying those opinions are necessary to determine Plaintiff's RFC. Accordingly, the ALJ's failure to fully develop the record constitutes an error necessitating remand pursuant to sentence four of 42 U.S.C. § 405(g). *See, e.g.*, *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

### B. *The Evidence Supporting Plaintiff's Application for Disability Benefits*

Although an ALJ is not required to assess each item of testimony presented or explain why he considered particular evidence unpersuasive or insufficient, "an administrative law judge may not 'cherry-pick' medical opinions that support his or her opinion while ignoring

15

opinions that do not." *Tim v. Colvin*, No. 6:12-CV-1761 (GLS)(ESH), 2014 WL 838080, at *7 (N.D.N.Y. Mar. 4, 2014) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir.2011)) (reversing and remanding); *see also Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (same).

Here, the ALJ attributed significant weight to the Questionnaire prepared by N.P. Rachel Griffin and co-signed by Dr. Keith Degi. (JS 3; Tr. 36-37.) As explained above, the Questionnaire states that Plaintiff has "moderate-to-marked" limitations in his ability to adhere to a schedule, be punctual, work with others, and interact with the public. (Tr. 283.)

Although she is not an accepted medical professional,[9] the ALJ gave N.P. Griffin's assessment of Plaintiff's mental impairments "significant weight." (*Id*. at 36.) Yet, when analyzing the portion of N.P. Griffin's assessment concluding that Plaintiff exhibits symptoms that are "moderate-to-marked," the ALJ afforded those specific observations "little weight" because there was "nothing in her treating records to support this assessment or in the subsequent mental health treatment evidence." (*Id.* at 36-37.) This conclusion is incompatible with the rest of the ALJ's opinion because he gave significant weight to some portions of the Questionnaire that also lack any direct support in N.P. Griffin's notes and the record. For example, the ALJ afforded significant weight to the assessment that Plaintiff has only moderate limitations in "[r]esponding appropriately to workplace changes." (*Id*. at 283.) Yet, there is

---

[9] Under the regulations in effect at the time Plaintiff filed his claim, an ALJ must give deference to the opinions of a claimant's treating physicians if they are well-supported by medical findings and is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 416.927(c)(2). To be considered a treating physician, a healthcare provider must be a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist or qualified speech-language pathologist. 20 C.F.R. § 416.913(a)(1)-(5).

nothing in N.P. Griffin's treatment notes or the record that expressly supports this conclusion. (*Id*. at 265-78, 280.)

In addition, ALJ Green's refusal to accept N.P. Griffin's finding that Plaintiff has "moderate-to-marked" limitations in "perform[ing] activities within a schedule and consistently be punctual," contradicts the evidence in the record. Indeed, N.P. Griffin's treatment notes indicate that Plaintiff was late to two appointments (*id*. at 269, 273) and the Questionnaire states that, although Plaintiff was scheduled to attend appointments on a monthly basis, he only attended six appointments between May 6, 2013 and June 9, 2014. (*Id*. at 280.) Further, and as acknowledged by ALJ Green, the record shows that Plaintiff was discharged from a mental health program at St. Marks because he "was not able to comply with program rules, namely attendance." (*Id*. at 36, 329.)

The ALJ, likewise, inconsistently weighed portions of the consultative report prepared by Dr. Tedoff. In his assessment, Dr. Tedoff stated that Plaintiff has "marked limits in his ability to maintain a regular schedule in a workplace" and concluded that Plaintiff's prognosis for "being able to look for, obtain and sustain himself in gainful employment in the near future is guarded to poor." (*Id*. at 262.) Similar to his assessment of the Questionnaire, the ALJ afforded more weight to the portions of Dr. Tedoff's report that imply that Plaintiff may not be disabled than portions that concluded that Plaintiff suffers from marked limitations because "there was nothing in [Dr. Tedoff's] examination record or in the overall treating evidence to support this assessment." (*Id*. at 37.)

In light of the above, the Court finds that the ALJ improperly weighed the medical and opinion evidence in the record because he improperly chose to rely on evidence that favored

17

denying Plaintiff's disability claim while ignoring evidence that supported Plaintiff's claim. (*Id.* at 269, 273, 280, 329.) Accordingly, the instant proceeding must be remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should contact N.P. Griffin, Dr. Degi, and Dr. Tedoff to ascertain the factual bases for their assessments regarding Plaintiff Castillo's mental impairments in order to properly weigh their opinions and accurately determine Plaintiff's RFC. *See, e.g.*, *Selinsky v. Comm'r of Soc. Sec.*, No. 08-CV-1363 (GLS)(VEB), 2010 WL 2671502, at *6 (N.D.N.Y. June 14, 2010), *adopted by*, No. 5:08-CV-1363, 2010 WL 2671499 (N.D.N.Y. June 30, 2010).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED insofar as this case is remanded for further proceedings.

**SO ORDERED.**

Dated: February 15, 2019
New York, New York

_____
KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE